**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CHRISTOPHER COOLEY,**

   **Plaintiff,**

 v.             Civil Action 2:20-cv-6172
                Magistrate Judge Kimberly A. Jolson

**LCZJ, Inc., et al.**

   **Defendants.**

## OPINION AND ORDER

  This matter is before the Court on Defendants' Motion to Dismiss (Doc. 39). For the following reasons, the Motion is **DENIED**.

**I. BACKGROUND**

  As a person with "severe hearing and vision impairments," Plaintiff Christopher Cooley uses a guide dog, Larkin, to assist him with major life activities. (Doc. 20, ¶¶ 2, 3). Larkin is a "service animal" as defined in 28 C.F.R. § 36.104, and assists Plaintiff with work or tasks, such as navigating spaces or alerting Plaintiff to the presence of people or sounds. (*Id.*, ¶ 3). On July 17, 2020, Plaintiff was on one of his regular trips to Columbus, Ohio. (*Id.*, ¶¶ 16, 29). His driver stopped at Defendants' Sunoco gas station ("the Station"), and Plaintiff entered the Station building for refreshments, bringing Larkin along. (*Id.*, ¶ 16). A Station employee quickly indicated to Plaintiff that Larkin was not welcome in the Station building. (Doc. 20, ¶ 17; Doc. 39-1 at 11:9–14, 21:23). Plaintiff says he explained that Larkin is a service animal, but the employee remained steadfast and demanded that Larkin leave. (Doc. 20, ¶¶ 18–20). Requiring Larkin to leave meant that Plaintiff left too. (*Id.* at ¶ 20).

Plaintiff lives in Portsmouth, Ohio, (Doc. 39-1 at 6:18–21), which is about 90 miles south of Columbus, but he travels to Columbus frequently, (Doc. 20, ¶ 29). He comes to Columbus for doctor's appointments, to attend events, and to visit friends. (Doc. 39-1 at 14:1–2). Plaintiff estimates that he visits Columbus between thirty and forty times per year, traveling along U.S. Highway 23, where the Station is located. (*Id.* at 13:23–24; Doc. 42 at 2). So, on his frequent trips to Columbus, Plaintiff usually (if not always) drives past the Station. (Doc. 39-1 at 24:18–25). Plaintiff's visit to the Station on July 17, 2020, was not his first visit to the Station—he's been to the Station at least four times. (*Id.* at 13:5–15, 26:1–3). But it was the first time Plaintiff entered the Station building. (*Id.* at 13:5–12).

After Plaintiff allegedly was denied access to a public accommodation due to his use of a service animal, he filed this lawsuit. (Doc. 20, ¶ 1). He seeks a permanent injunction requiring Defendants to comply with Title III of the Americans with Disabilities Act ("ADA"), and he brings state-law negligence and disability discrimination claims under the Court's supplemental jurisdiction. (*Id.*, ¶¶ 14, 33, 35–50). Defendants argue that Plaintiff lacks standing to pursue injunctive relief under the ADA, and have filed a Motion to Dismiss (Doc. 39). The Motion is fully briefed and ripe for review. (*See* Doc. 42).

## II.     STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of subject-matter jurisdiction. The Sixth Circuit recognizes two kinds of 12(b)(1) motions, a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack merely questions the sufficiency of the pleading, and "the court must take the material allegations in the petition as true and construed in the light most favorable to the nonmoving party." *Id.* A factual attack, on the other hand, challenges the factual existence of a case or controversy

that can be heard by this Court. *See id.* In deciding such a motion, "no presumptive truthfulness applies to the factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citation omitted). Still, "the fact that the court takes evidence for the purpose of deciding the jurisdictional issue does not mean that factual findings are therefore binding in future proceedings." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Regardless of the type of attack, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

### III. DISCUSSION

The ADA seeks "to remedy widespread discrimination against disabled individuals." *Neal v. Divya Jyoti Ltd.*, No. 2:18-CV-958, 2019 WL 3416255, at *3 (S.D. Ohio July 29, 2019) (internal quotation marks omitted) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001)). It is a "mandate to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." *PGA Tour*, 532 U.S. at 675. This is done, in part, through Title III, which guarantees equal access to public accommodations. 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."). Private citizens may enforce Title III by seeking injunctive relief in federal court. *Divya Jyoti*, 2019 WL 3416255, at *5 (citing 42 U.S.C. § 12188(a)(2)). To do so, however, the citizens bringing private enforcement suits "must reckon with the jurisdictional limitations of the federal courts . . . ." *See Breeze v. Kabila Inc.*, No. CV 21-753 (JDB), 2021 WL

3

5918678, at *1 (D.D.C. Dec. 15, 2021). Defendants say Plaintiff has not done so here because he has not shown a plausible intent to return to the Station. (Doc. 39).

### A. Article III

Article III limits "federal courts to hear only actual cases and controversies." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). Standing is a prerequisite for any cognizable case or controversy. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (describing standing as an "irreducible constitutional minimum). To establish Article III standing, "[P]laintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Sullivan v. Benningfield*, 920 F.3d 401, 407 (6th Cir. 2019) (internal quotation marks and brackets omitted) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014)).

Still more is required when injunctive relief is sought. A plaintiff must "show both 'past injury and a real and immediate threat of future injury.'" *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019) (quoting *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013)). This threat of future injury "must be real and immediate and not premised upon the existence of past injuries alone." *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. 2014) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983)). In ADA Title III cases, a plaintiff "demonstrates the requisite threat of future injury where he establishes (1) a plausible intent to return to the noncompliant accommodation or (2) that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers." *Mosley*, 942 F.3d at 757 (quotation marks omitted) (citing *Gaylor*, 582 F. App'x at 580).

Notably, Defendants challenge Plaintiff's standing only with regards to prospective injury. (Doc. 39 at 5). As such, the Court similarly focuses its analysis but notes that the other elements

of standing are easily satisfied here. (*See* Doc. 20, ¶¶ 17–20 (satisfying concrete and particularized injury); *id.*, ¶¶ 23–28 (satisfying causation); *id.* at 8 (satisfying redressability)).

### B. Prospective Injury

To allege the requisite threat of future injury, Plaintiff must show: (1) a plausible intent to return to the Station, or (2) that he would return, but is deterred from visiting because of the alleged accessibility barriers. *See Mosley*, 942 F.3d at 757 (citing *Gaylor*, 582 F. App'x at 580). Defendants rely on Plaintiff's allegations and deposition testimony to say that he has not established such an intent. (*See generally* Doc. 39). Because Defendants have reached beyond the pleadings, their attack on standing is factual. (Doc. 39 at 3). As such, Plaintiff must respond with specific facts demonstrating a plausible intent to return. *See Judy v. Pingue*, No. 2:08-CV-859, 2009 WL 4261389, at *1 (S.D. Ohio Nov. 25, 2009) (discussing a plaintiff's burden to survive a factual attack) (citing *Ctr. For Biological Diversity v. Lueckel*, 417 F.3d 532, 537 (6th Cir. 2005)). Like the parties, the Court considers the entire record.

To evaluate a likelihood of return, courts evaluate four factors: "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Judy*, 2009 WL 4261389, at *2 (internal quotation marks omitted) (quoting *D'lil v. Stardust Vacation Club*, No. 2:00–CV–01496, 2001 WL 1825832, at *3 (E.D. Cal. Dec.21, 2001)); *see also Vaughn v. Rent–a–Center*, No. 2:06–CV–1207, 2009 WL 723166 (S.D. Ohio March 16, 2009); *Neal v. Morales Real Est. Invs., Ltd.*, No. 2:18-CV-632, 2019 WL 5802533, at *3 (S.D. Ohio Nov. 7, 2019). Though the factors are helpful, none of them is dispositive because, at base, the question is whether there is a plausible intent to return. *Mosley*, 942 F.3d at 759.

Two cases usefully show how the factors are applied. In *Mosley v. Kohls Department Stores, Inc.*, the Sixth Circuit considered whether the plaintiff, an Arizona resident, sufficiently alleged a plausible intent to return to two alleged ADA non-compliant stores in the Detroit, Michigan area. 942 F.3d at 760. There, the Court took into account the plaintiff's annual social visits to the Detroit area; his upcoming visits to see musicians in Detroit; and his assertion that he would return to the stores again if they were ADA-compliant. *Id.* The Sixth Circuit held that "[t]aking [the plaintiff's] allegations as true, we can infer a plausible intent to return . . . ." *Id.* at 761.

The Sixth Circuit came to the same conclusion in *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x at 580–81. The plaintiff, a Georgia resident, established a plausible intent to return to a Tennessee shopping center because (1) he had a history of visiting the area, (2) he alleged he visited and attempted to patronize defendant's store a few times, (3) he alleged a past injury in the parking lot, and (4) he set forth reasons he made trips to the area and expressed his particular enjoyment for the shopping center in which defendant is located, and (5) he had plans to return to the property when he visited the area in a month. *Id.* (determining plaintiff established the requisite threat of future injury at the motion to dismiss stage).

Applying the lesson of *Mosley* and *Gaylor*, Plaintiff has demonstrated a plausible intent to return to the Station.

<u>Proximity</u>: The Court begins with proximity. Plaintiff lives in Portsmouth, Ohio, (Doc. 39-1 at 6:18–21), which is roughly 90 miles south of Columbus. Though not an exact science, courts have tended to find proximity "especially significant" where the distance between a defendant's location and a plaintiff's residence "is more than 100 miles." *Judy*, 2009 WL 4261389, at *3 (citing *Molski v. Mandarin Touch Rest.*, 385 F. Supp. 2d 1042, 1045 (C.D. Cal. 2005)); *see*

*also Morales Real Est. Invs.*, 2019 WL 5802533, at *3; *Smith v. E. W. Enterprises, LLC*, No. 3:17-CV-00736, 2017 WL 6462350, at *3 (M.D. Tenn. Aug. 7, 2017). Here, the distance is under that threshold. That said, Plaintiff also does not live particularly close. So, on balance, the Court determines that proximity is neutral.

Still, even assuming distance weighs against an intent to return, proximity would not be dispositive. *Mosley*, 942 F.3d at 759 (noting that a plaintiff need not satisfy each factor because the ultimate inquiry is whether there is a plausible intent to return). *See also id*. at 760 (finding a plausible intent to return to Michigan stores despite plaintiff residing in Arizona); *Divya Jyoti*, 2019 WL 3416255, at *1 (same, hotel 123 miles from plaintiff's home); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040 (9th Cir. 2008) (same, convenience store 550 miles from plaintiff's home). *But see Morales Real Est. Invs.*, 2019 WL 5802533, at *3 (finding most factors, including a distance of 123 miles, weigh against likelihood of return); *Smith*, 2017 WL 6462350, at *3 (M.D. Tenn. Aug. 7, 2017) (same, over 100 miles).

<u>Past Patronage</u>: The next factor, past patronage, favors Plaintiff. Plaintiff visited the Station at least three times prior to the visit giving rise to this case. (Doc. 39-1 at 26:1–3). Plaintiff's history of visiting the Station establishes a plausible intent to return. *See Vaughn*, 2009 WL 723166, at *7 (crediting three prior visits to furniture chain store, and the particular store at issue twice); *Walker v. Asmar Center, LLC*, No. 11-11745, 2011 WL 5822394, at *4 (E.D. Mich. Nov. 15, 2011) (crediting visiting three stores in a particular shopping center on one occasion). *Cf. Walker v. 9912 E. Grand River Assocs., LP*, No. 11-12085, 2012 WL 1110005, at *6 (E.D. Mich. April 3, 2012) (holding that one visit to a store in an area not frequented by plaintiff was insufficient to confer standing).

Defendants ask the Court to take a narrower view of past patronage. They suggest that the single occasion that Plaintiff entered the building, not the number of times Plaintiff purchased gas at the Station, is what matters. (Doc. 39 at 5). Yet motorists, including passengers, often utilize gas stations without venturing inside to make purchases, though they surely expect that they may do so if desired. Individuals with disabilities should not be precluded from making such spontaneous decisions. Put another way, Plaintiff's four prior visits make it likely that he will find himself in the same situation, stopping for fuel at the Station and desiring to enter the building.

Further, the Court notes that Plaintiff need not visit after the incident. Once Plaintiff was allegedly denied access to the store, he was not required to engage in the "futile gesture" of returning to an inaccessible place. *Mosley*, 942 F.3d at 760 (citing 42 U.S.C. §§ 12188(a)(1), 12183(a); *D'Lil*, 538 F.3d at 1037). *See also id.* ("Title III does not require persons with disabilities to subject themselves to repeated instances of discrimination in order to invoke its remedial framework.") ( internal quotation marks and brackets omitted) (quoting *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003)).

*Frequency of Travel*: Perhaps the most compelling factor in this case, Plaintiff's frequency of travel weighs heavily in favor of the plausibility of his intent to return. Plaintiff visits Columbus between thirty and forty times annually to go to doctor's appointments, attend events, and visit friends. (Doc. 39-1 at 13:23–24, 14:1–2). His route of travel usually, if not always, takes him directly past the Station. (*Id.* at 24:18–25). Plaintiff's frequency of travel past the Station is especially convincing. *See Gaylor*, 582 F. App'x at 578 (finding persuasive plaintiff's frequent travels to the area to visit family, museums, and malls). Gas stations, typically conveniently located along routes of travel, encourage spontaneous visits based on whim or need. The Station's location along Plaintiff's well-worn route makes Plaintiff's intent to return quite plausible.

8

*Plan to Return*: Finally, the Court considers the definitiveness of Plaintiff's plans to return. Here, Plaintiff has no concrete plans to return to the Station, but this is not fatal to Plaintiff's standing. *See Mosley*, 942 F.3d at 759 (noting that a plaintiff need not satisfy each factor because the ultimate inquiry is whether there is a plausible intent to return). Plaintiff states he intends to return to the station when it is ADA-compliant. (Doc. 20, ¶ 29; Doc. 39-1 at 29:3–10, 17:4–20). Though not specific, Plaintiff's generalized intent is enough to make his return plausible. *See Divya Jyoti*, 2019 WL 3416255, at *6 (concluding that plaintiff's lack of specificity does not defeat standing because plaintiff's statement that he plans to return once the accommodation is ADA-compliant is sufficiently specific at the summary judgment stage); *Vaughn*, 2009 WL 723166, at *7 (finding the definitiveness of Plaintiffs plans to return, which did not include a specific date, not so vague as to defeat standing at summary judgment).

Further, an intent to return to the allegedly non-compliant location can be inferred when a plaintiff establishes "more than a 'some day' intent to return to the geographic area" and has a desire to visit the accommodation. *Mosley*, 942 F.3d at 758–59. Here, Plaintiff has "established more than a 'some day' intent" to return to Columbus given the frequency of his travel to the city and the nature of his trips, which includes going to doctor's appointments several times a year, attending events, and visiting friends. (Doc. 39-1 at 14:1–2). And he has expressed a desire to visit the accommodation if it were made accessible. (Doc. 20, ¶ 29; Doc. 39-1 at 29:3–10, 17:4–20).

Importantly, the purpose of the ADA—"to integrate individuals with disabilities into the economic and social mainstream of American life"—would be frustrated if Plaintiff was required "to provide a definitive plan for returning to the accommodation." *Mosley*, 942 F.3d at 759 (internal quotation marks omitted) (citing *PGA Tour*, 532 U.S. at 675). "Persons with disabilities

are entitled to full and equal access to all public accommodations, wherever they may be and at any point in time." *Id.* This equal access applies to gas stations too, which people rarely have definitive plans to visit. If a definitive plan was required, Title III actions against public accommodations that require reservations, such as hotels, would be more successful than those against public accommodations that are spontaneously enjoyed. *Id.* This is counter to the purpose of the ADA. Thus, it is enough that Plaintiff frequently visits the geographic area and would visit the accommodation in the future if it becomes ADA-compliant. *See id.*

*****

Analysis of the required factors demonstrates that Plaintiff's intent to return to the Station is plausible. At bottom, Plaintiff has professed a reasonable and credible desire to return to the Station that he passes sixty to eighty times per year. Because he has demonstrated a likelihood of return, Plaintiff has established standing to sue for injunctive relief under Title III of the ADA. Defendants' Motion to Dismiss (Doc. 39) is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 39) is **DENIED**. In light of this denial, the briefing schedule on Plaintiff's Motion to File Third Amended Complaint (Doc. 41) is as follows: Defendants' Response is due **twenty-one (21) days** from the date of this Order; Plaintiff's Reply is due **fourteen (14) days** from the filing of the Response.

IT IS SO ORDERED.

Date: April 14, 2022

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE